**FILED**
**FEBRUARY 15, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 968**

| | |
|---|---|
| CHICAGO NATIONAL LEAGUE BALL CLUB, L.L.C., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| WRIGLEY ROOFTOPS III, L.L.C., d/b/a Wrigley Field Rooftop Club; WRIGLEY ROOFTOPS IV, L.L.C., d/b/a Sheffield Baseball Club; and THOMAS GRAMATIS, | ) ) ) ) ) ) |
| Defendants. | |

**JUDGE DER-YEGHIAYAN**
**MAGISTRATE JUDGE COX**

**COMPLAINT FOR INJUNCTION, DAMAGES AND OTHER RELIEF**

Plaintiff Chicago National League Ball Club, L.L.C. ("the Cubs"), for its Complaint against Wrigley Rooftops III, L.L.C., d/b/a Wrigley Field Rooftop Club; Wrigley Rooftops IV, L.L.C., d/b/a Sheffield Baseball Club; and Thomas Gramatis, states as follows:

**NATURE OF ACTION**

1.  Defendants own and operate rooftop businesses in new buildings at 3617 and 3619 N. Sheffield ("Defendants' businesses"). The rooftop operation at 3617 does business as the Wrigley Field Rooftop Club, and the one at 3619 does business as the Sheffield Baseball Club. Defendants are currently selling tickets for the 2008 season. Based upon advertised prices at full capacity, Defendants' revenues would, at full capacity, exceed $6.7 million for the 2008 regular season alone.

2.  In marketing these businesses, Defendants make wholesale use of the Cubs' trademarks without the Cubs' permission and falsely claim to be "Officially Endorsed by the Chicago Cubs." The Cubs have demanded that Defendants cease and desist from using the Cubs' marks and from otherwise misleading Cubs fans and other consumers. Although

Defendants said they would comply with the Cubs' demand, Defendants have continued to illegally use the Cubs' marks and to misrepresent these rooftops as officially endorsed by the Cubs.

3. Defendants' violations and misrepresentations fall within a pattern of broken promises, violations and deceptions by defendant Gramatis, including the following:

    a. In 2004, Gramatis (on behalf of a different rooftop) participated in a federal court mediation of the Cubs lawsuit against the rooftops and agreed to the settlement mediated by the Court. Gramatis soon reneged on his agreement and the Court finally had to enter a formal order requiring him to honor the settlement he had made; and

    b. Gramatis subsequently violated his agreements with the Cubs. Most recently, he has failed to pay the Cubs for the three rooftops he operated in the 2007 season, illicitly keeping the Cubs' money for his own use.

4. Although the Cubs had originally been willing to enter into agreements with Gramatis for the new buildings on the same terms as the other rooftop operators, Gramatis' conduct (including his failure to pay for 2007 and his demand for a better deal than the other rooftops) has caused the Cubs to withdraw that offer.

5. By his misconduct, Gramatis is depriving the Cubs of revenues for the team and interfering with the peaceful, productive arrangement the Cubs and the rooftops have enjoyed since 2004. The Cubs have therefore informed Gramatis that they intend to prevent him from providing his customers at 3617 and 3619 N. Sheffield with any guarantee that they will have an unobstructed view of home plate and other parts of Wrigley Field in 2008 and are filing this suit to prevent Defendants from hijacking the Cubs' marks and falsely claiming to be officially endorsed by the Cubs.

## PARTIES

6. Plaintiff Chicago National League Ball Club, L.L.C. is a Delaware limited liability company. The Cubs present their home Major League Baseball games at Wrigley Field in Chicago.

7. Defendant Wrigley Rooftops III, L.L.C., d/b/a the Wrigley Field Rooftop Club ("Wrigley Field Rooftop Club"), is an Illinois limited liability company. Wrigley Field Rooftop Club is in the business of selling to the public rooftop and other seats from which to watch Cubs games in person and on television. The facilities of the Wrigley Field Rooftop Club are located at 3617 N. Sheffield Avenue.

8. Defendant Wrigley Rooftops IV, L.L.C., d/b/a the Sheffield Baseball Club ("Sheffield Baseball Club"), is an Illinois limited liability company. Sheffield Baseball Club is in the business of selling to the public rooftop and other seats from which to watch Cubs games in person and on television. The facilities of the Sheffield Baseball Club are located at 3619 N. Sheffield Avenue.

9. Defendant Thomas Gramatis ("Gramatis") owns, controls and operates the Wrigley Field Rooftop Club and the Sheffield Baseball Club. He is responsible for the promotional and marketing materials of Defendants' businesses.

## JURISDICTION AND VENUE

10. This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

11. Venue is proper under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### A. The Cubs' Property Rights.

12. The Cubs own and operate Wrigley Field, the second oldest Major League Baseball ballpark in the United States, and the Chicago Cubs baseball team, a charter member of the National League. The Cubs provide a variety of seats from which to view open-air games at Wrigley Field.

13. Through the Cubs' investments over the years and through its marketing efforts and nurturing of the team at Wrigley Field, the Cubs have generated enormous goodwill and a dedicated following for Cubs games at Wrigley Field.

14. The Cubs have spent considerable sums advertising and promoting its inherently distinctive trade names and logos, including:

    a. "Cubs," registered trademark;

    b. the stylized "C" logo, registered trademark;

    c. the circle Cubs logo, registered trademark;

    d. "Wrigley Field";

    e. "Wrigley Field Home of Chicago Cubs," registered trademark; and

    f. the Wrigley Field marquee logo, registered trademark.

15. Through the Cubs' investments and activities over the years, these trade names and logos (collectively, "the Cubs' Marks") have come to be associated with Plaintiff.

### B. Defendants' Misappropriation Of The Cubs' Marks And Deceptive Advertising.

16. Defendants charge for admission to their rooftop and private party facilities, with the per person charge reaching as much as $150 or more. In return for payment of the entry charge, Defendants provide their patrons with the ability to view Cubs games in person as they

are played at Wrigley Field and on television and to partake of food and drink.  Unlike bars and restaurants, Defendants' rooftop businesses operate only in conjunction with Cubs' home games.  At all other times, they stand idle.

17. Defendants market their services and commercial activities by associating themselves with the Cubs and Wrigley Field, trading on the Chicago Cubs name, the Cubs' Marks, Cubs' players, Wrigley Field and other words, symbols and pictures associated with the Cubs.  In a further attempt to trade off Plaintiff's goodwill, Defendants also advertise themselves as "Officially Endorsed by the Chicago Cubs."

18. The Wrigley Field Rooftop Club uses the Cubs' Marks, without authorization, in its name, in its website domain name and on its website http://wrigleyfieldrooftops.com.  That website also incorrectly states in several places that the Wrigley Field Rooftop Club is "officially endorsed by the Chicago Cubs."

19. The Sheffield Baseball Club, without authorization, uses the Cubs' Marks on its website http://sheffieldbaseballclub.com.  That website also incorrectly states in several places that the Sheffield Baseball Club is "officially endorsed by the Chicago Cubs."

20. Defendants' marketing efforts are, and have been, likely to cause confusion, to cause mistake or to deceive as to, *inter alia*, the affiliation, association or connection between Defendants and the Cubs and the Cubs' approval or sponsorship of Defendants' business activities.

**C.     The Cubs' Efforts To Enter Into a License Agreement With Defendants.**

21. Gramatis, through his company Annex Club, L.L.C. ("Annex"), owns and operates another rooftop facility adjacent to Wrigley Field called the Ivy League Baseball Club.

22. In 2004, the Cubs and Annex entered into an agreement which, *inter alia*, allowed Annex to operate the Ivy League Baseball Club and use the Cubs' Marks in exchange for an annual royalty payment.

23. The Cubs have entered into similar license agreements with 12 other rooftop operators.

24. When Gramatis began operating the Sheffield Baseball Club in 2007, the Cubs offered Gramatis an agreement with terms similar to those agreed to by the other rooftop operators. Gramatis led the Cubs to believe that he was willing to accept those terms and would abide by them, but the agreement was never finalized.

25. In February 2008, the Cubs reiterated its offer to enter into an agreement with the Sheffield Baseball Club substantially similar to the agreement the Cubs have entered into with the other rooftop operators. The Sheffield Baseball Club, through Gramatis, refused.

26. In late 2007, Gramatis announced plans to operate the Wrigley Field Rooftop Club during the 2008 season.

27. In February 2008, the Cubs offered to enter into an agreement with the Wrigley Field Rooftop Club substantially similar to the agreement the Cubs have entered into with the other rooftop operators. The Wrigley Field Rooftop Club, through Gramatis, refused.

**COUNT I:**
**VIOLATION OF THE LANHAM ACT 15 U.S.C. §§ 1114, 1116(d) AND 1125**

28. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

29. The Cubs' Marks are inherently distinctive, have acquired a secondary meaning among consumers and have come to be associated with Plaintiff. Plaintiff uses the Cubs' Marks, *inter alia*, in advertisements promoting ticket sales in interstate commerce.

30. The words and symbols used by Defendants in their marketing materials are, and have been, likely to cause confusion as to the affiliation, connection or association of Defendants with the Cubs and the Cubs' approval or sponsorship of Defendants' business activities. Defendants' marketing efforts have caused actual confusion among consumers. Defendants acted willfully and wantonly in an intentional effort to trade off of the Cubs' Marks and goodwill.

31. Defendants' activities in this regard are undertaken in connection with the sale of goods and services in interstate commerce, and Defendants' activities adversely affect, *inter alia*, Plaintiff's ticket sales and/or the ticket sales of Plaintiff's licensed rooftop partners in interstate commerce.

32. Plaintiff has been and will continue to be injured by Defendants' misleading advertising.

WHEREFORE, the Cubs pray for:

1. compensatory damages;

2. disgorgement to Plaintiff of Defendants' profits;

3. treble damages pursuant to 15 U.S.C. § 1117(a);

4. statutory damages pursuant to 15 U.S.C. § 1117(c);

5. pre-judgment interest;

6. an injunction barring Defendants from using the Cubs' Marks and engaging in any commercial advertising, promotion or marketing likely to cause confusion, mistake or deception concerning Defendants' connection or affiliation with the Cubs or the Cubs' sponsorship or approval of Defendants' businesses;

7. an award granting Plaintiff its costs and reasonable attorneys' fees; and

8. such other relief as the Court may award.

Dated: February 15, 2008

Respectfully submitted,

CHICAGO NATIONAL LEAGUE
BASEBALL CLUB, L.L.C.

By:  /s/ John R. McCambridge
One of Its Attorneys

John R. McCambridge
Gary M. Miller
GRIPPO & ELDEN
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700

143924v6