**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO NATIONAL LEAGUE BALL CLUB, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 C 968 |
| v. | ) ) | Judge Samuel Der-Yeghiayan |
| WRIGLEY ROOFTOPS III, L.L.C., d/b/a Wrigley Field Rooftop Club; WRIGLEY ROOFTOPS IV, L.L.C., d/b/a Sheffield Baseball Club; and THOMAS GRAMATIS, | ) ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTION, DAMAGES AND OTHER RELIEF**

Defendants, Wrigley Rooftops III, L.L.C., d/b/a Wrigley Field Rooftop Club ("WFRC"); Wrigley Rooftops IV, L.L.C., d/b/a Sheffield Baseball Club ("SBC"); and Thomas Gramatis ("Gramatis") (collectively, the "Defendants"), by their attorneys Kenneth K. Dort, George R. Spatz and Jeremiah J. Posedel of McGuireWoods LLP, for their Answer and Affirmative Defenses to the First Amended Complaint for Injunction, Damages and Other Relief of Chicago National League Ball Club, LLC (the "Club") state as follows:

**NATURE OF ACTION**

1.  Defendants own and operate rooftop businesses in new buildings at 3617 and 3619 N. Sheffield ("Defendants' businesses"). The rooftop operation at 3617 does business as the Wrigley Field Rooftop Club, and the one at 3619 does business as the Sheffield Baseball Club. Defendants are currently selling tickets for the 2008 season. Based upon advertised prices, Defendants' revenues would, at full capacity, exceed $6.7 million for the 2008 regular season alone.

1

**ANSWER:** Defendants respond to the last sentence of Paragraph 1 that it is speculative at best, and accordingly deny it in full. Defendants admit the remaining allegations contained in Paragraph 1.

2. In marketing these businesses, Defendants make wholesale use of the Cubs' trademarks without the Cubs' permission and falsely claim to be "Officially Endorsed by the Chicago Cubs." Defendants also have infringed, and threaten to infringe, the Cubs' copyrights in telecasts of Cubs baseball games. The Cubs have demanded that Defendants cease and desist from using the Cubs' marks and from otherwise misleading Cubs fans and other consumers. Although Defendants said they would comply with the Cubs' demand, Defendants have continued to illegally use the Cubs' marks and to misrepresent these rooftops as officially endorsed by the Cubs.

**ANSWER:** Defendants admit that they previously used certain of the Club's trademarks and the phrase "Officially Endorsed by the Chicago Cubs" on their websites based on Defendants' understanding that they were allowed to do so. However, all such trademarks and the phrase "Officially Endorsed by the Chicago Cubs" have since been removed from Defendants' websites. Responding further, Defendants deny all the remaining allegations contained in Paragraph 2.

3. Defendants' violations and misrepresentations fall within a pattern of broken promises, violations and deceptions by defendant Gramatis, including the following:

   a. In 2004, Gramatis (on behalf of a different rooftop) participated in a federal court mediation of the Cubs lawsuit against the rooftops and agreed to the settlement mediated by the Court. Gramatis soon reneged on his agreement and the Court finally had to enter a formal order requiring him to honor the settlement he had made; and

   b. Gramatis subsequently violated his agreements with the Cubs. Most recently, he has failed to pay the Cubs for the three rooftops he operated in the 2007 season, illicitly keeping the Cubs' money for his own use.

**ANSWER:** Defendants deny all the allegations contained in Paragraphs 3(a) and 3(b).

4. Although the Cubs had originally been willing to enter into agreements with Gramatis for the new buildings on the same terms as the other rooftop operators, Gramatis' conduct (including his failure to pay for 2007 and his demand for a better deal than the other rooftops) has caused the Cubs to withdraw that offer.

2

**ANSWER:** Defendants admit that the Club, WFRC and SBC have conducted negotiations relating to the operation of WFRC's and SBC's respective businesses, which negotiations are ongoing. Responding further, Defendants are without sufficient information to form a belief as to the accuracy of the remaining allegations contained in Paragraph 4, and they are therefore denied.

5. By his misconduct, Gramatis is depriving the Cubs of revenues for the team and interfering with the peaceful, productive arrangement the Cubs and the rooftops have enjoyed since 2004. The Cubs have therefore informed Gramatis that they intend to prevent him from providing his customers at 3617 and 3619 N. Sheffield with any guarantee that they will have an unobstructed view of home plate and other parts of Wrigley Field in 2008 and are filing this suit to prevent Defendants from misappropriating the Cubs' marks, falsely claiming to be officially endorsed by the Cubs and infringing the Cubs' copyrights.

**ANSWER:** Defendants admit that (i) the Club has filed this lawsuit, and (ii) the Club has informed Defendants that it intends to prevent WFRC and SBC from providing their respective customers at 3617 and 3619 North Sheffield with any guarantee that they will have an unobstructed view of home plate and other parts of Wrigley Field for games in 2008. Responding further, Defendants deny all the remaining allegations contained in Paragraph 5.

## PARTIES

6. Plaintiff Chicago National League Ball Club, LLC is a Delaware limited liability company. The Cubs present their home Major League Baseball games at Wrigley Field in Chicago. All of the Cubs home games are telecast, and the Cubs own the copyright in each telecast carried by WGN-TV, WCIU-TV and Comcast SportsNet-Chicago.

**ANSWER:** Defendants are without sufficient information to form a belief as to the accuracy of the allegations contained in Paragraph 6, sentences one and three, and these allegations are therefore denied. Responding further, Defendants admit the second sentence of Paragraph 6.

7. Defendant Wrigley Rooftops III, L.L.C. d/b/a the Wrigley Field Rooftop Club ("Wrigley Field Rooftop Club"), is an Illinois limited liability company. Wrigley Field Rooftop Club is in the business of selling to the public rooftop and other seats from which to watch Cubs games in person and on television. The facilities of the Wrigley Field Rooftop Club are located at 3617 N. Sheffield Avenue.

3

**ANSWER:** Defendants admit that (i) Defendant Wrigley Rooftops III, L.L.C. does business under the tradename Wrigley Field Rooftop Club, and (ii) the latter is a limited liability company organized under Illinois law.  Defendants further admit the location of the latter's facilities and that it allows guests, for a charge, to eat, drink and view from its facilities games played in Wrigley Field.  Responding further, Defendants deny the remaining allegations of Paragraph 7.

8. Defendant Wrigley Rooftops IV, L.L.C., d/b/a the Sheffield Baseball Club ("Sheffield Baseball Club"), is an Illinois limited liability company.  Sheffield Baseball Club is in the business of selling to the public rooftop and other seats from which to watch Cubs games in person and on television.  The facilities of the Sheffield Baseball Club are located at 3619 N. Sheffield Avenue.

**ANSWER:** Defendants admit that (i) Defendant Wrigley Rooftops IV, L.L.C. does business under the tradename Sheffield Baseball Club, and (ii) the latter is a limited liability company organized under Illinois law.  Defendants further admit the location of the latter's facilities and that it allows guests, for a charge, to eat, drink and view from its facilities games played in Wrigley Field.  Responding further, Defendants deny the remaining allegations of Paragraph 8.

9. Defendant Thomas Gramatis ("Gramatis") owns, controls and operates the Wrigley Field Rooftop Club and the Sheffield Baseball Club.  He is responsible for, and benefits from, the promotional and marketing materials of Defendants' businesses and their use of Cubs game telecasts.

**ANSWER:** Defendants deny all the allegations contained in Paragraph 9.

## JURISDICTION AND VENUE

10. This action arises in part under the Lanham Act, 15 U.S.C. § 1051, *et seq*. and in part under the Copyright Act, 17 U.S.C. § 101, *et seq*.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

**ANSWER:** Defendants respond that the allegations set forth in Paragraph 10 are legal conclusions not requiring any response thereto.  Responding further, Defendants deny that any claims have been stated.

11. Venue is proper under 28 U.S.C. §§ 1391 and 1400.

**ANSWER:** Defendants respond that the allegations set forth in Paragraph 11 are legal conclusions not requiring any response thereto. Responding further, Defendants deny that any claims have been stated.

## FACTUAL BACKGROUND

### A.   The Cubs' Property Rights.

12. The Cubs own and operate Wrigley Field, the second oldest Major League Baseball ballpark in the United States, and the Chicago Cubs baseball team, a charter member of the National League. The Cubs provide a variety of seats from which to view open-air games at Wrigley Field.

**ANSWER:** Defendants are without sufficient information to form a belief as to the accuracy of the allegations contained in Paragraph 12 pertaining to the ownership of the team and the stadium, and these allegations are therefore denied. Defendants admit that Wrigley Field has various types of seating. Responding further, Defendants deny the remaining allegations contained in Paragraph 12.

13. Through the Cubs' investments over the years and through its marketing efforts and nurturing of the team at Wrigley Field, the Cubs have generated enormous goodwill and a dedicated following for Cubs games at Wrigley Field.

**ANSWER:** Defendants are without sufficient information to form a belief as to the accuracy of the allegations contained in Paragraph 13, and these allegations are therefore denied.

14. Plaintiff has spent considerable sums advertising and promoting its inherently distinctive trade names and logos, including:

      a.   "Cubs," registered trademark;

      b.   the stylized "C" logo, registered trademark;

      c.   the circle Cubs logo, registered trademark;

      d.   "Wrigley Field";

   e.  "Wrigley Field Home of Chicago Cubs," registered trademark; and

   f.  the Wrigley Field marquee logo, registered trademark.

**ANSWER:** Defendants are without sufficient information to form a belief as to the accuracy of the allegations contained in Paragraph 14, and these allegations are therefore denied.

 15. Through the Cubs' investments and activities over the years, these trade names and logos (collectively, "the Cubs' Marks") have come to be associated with Plaintiff.

**ANSWER:** Defendants are without sufficient information to form a belief as to the accuracy of the allegations contained in Paragraph 15, and these allegations are therefore denied.

 16. The Cubs own the copyrights in local telecasts of each game, including each home game played at Wrigley Field that is carried on WGN-TV, WCIU-TV and/or Comcast SportsNet-Chicago.

**ANSWER:** Defendants are without sufficient information to form a belief as to the accuracy of the allegations contained in Paragraph 16, and these allegations are therefore denied.

  **B.** **Defendants' Misappropriation Of The Cubs' Marks, Deceptive Advertising and Copyright Infringement.**

 17. Defendants charge for admission to their rooftop and private party facilities, with the per person charge reaching $150 or more. In return for payment of the entry charge, Defendants provide their patrons with the ability to view Cubs games in person as they are played at Wrigley Field and on television and to partake of food and drink. Unlike bars and restaurants, Defendants' rooftop businesses operate only in conjunction with Cubs' home games. At all other times, they stand idle.

**ANSWER:** Defendants deny all the allegations contained in Paragraph 17. Responding further, Defendants state that the third and forth sentences are misleading because, as the Club is aware, the Municipal Code of Chicago §4-388-120 prohibits rooftop businesses around Wrigley Field from operating except on days when the Cubs play home games.

 18. Defendants market their services and commercial activities by associating themselves with the Cubs and Wrigley Field, trading on the Chicago Cubs name, the Cubs' Marks, Cubs' players, Wrigley Field and other words, symbols and pictures associated with the Cubs. In a further attempt to trade on Plaintiff's goodwill, Defendants have also advertised themselves as "Officially Endorsed by the Chicago Cubs."

6

**ANSWER:** Defendants admit that WFRC and SBC previously used certain of the Club's trademarks and the phrase "Officially Endorsed by the Chicago Cubs" on their respective websites based on Defendants' understanding that WFRC and SBC were allowed to do so by the Club. However, all such trademarks and the phrase "Officially Endorsed by the Chicago Cubs" have since been removed from the WFRC and SBC websites. Responding further, Defendants deny all the remaining allegations contained in Paragraph 18.

19. The Wrigley Field Rooftop Club uses the Cubs' Marks, without authorization, in its name, in its website domain name and on its website http://wrigleyfieldrooftops.com. That website has also incorrectly stated in several places that the Wrigley Field Rooftop Club is "officially endorsed by the Chicago Cubs."

**ANSWER:** Defendants admit that WFRC and SBC previously used certain of the Club's trademarks and the phrase "Officially Endorsed by the Chicago Cubs" on their respective websites based on Defendants' understanding that WFRC and SBC were allowed to do so by the Club. However, all such trademarks and the phrase "Officially Endorsed by the Chicago Cubs" have since been removed from the WFRC and SBC websites. Responding further, Defendants deny all the remaining allegations contained in Paragraph 19.

20. The Sheffield Baseball Club, without authorization, uses the Cubs' Marks on its website http://sheffieldbaseballclub.com. That website also incorrectly states in several places that the Sheffield Baseball Club is "officially endorsed by the Chicago Cubs."

**ANSWER:** Defendants admit that WFRC and SBC previously used certain of the Club's trademarks and the phrase "Officially Endorsed by the Chicago Cubs" on their respective websites based on Defendants' understanding that WFRC and SBC were allowed to do so by the Club. However, all such trademarks and the phrase "Officially Endorsed by the Chicago Cubs" have since been removed from the WFRC and SBC websites. Responding further, Defendants deny all the remaining allegations contained in Paragraph 20.

21. Defendants' marketing efforts are, and have been, likely to cause confusion, to cause mistake or to deceive as to, *inter alia*, the affiliation, association or connection between

Defendants and the Cubs and falsely state and/or imply the Cubs' approval or sponsorship of Defendants' business activities.

**ANSWER:**  Defendants deny all the allegations contained in Paragraph 21.

      **C.**      **The Cubs' Efforts To Enter Into a License Agreement With Defendants.**

22. Gramatis, through his company Annex Club, L.L.C. ("Annex"), owns and operates another rooftop facility adjacent to Wrigley Field called the Ivy League Baseball Club.

**ANSWER:**  Defendants deny all the allegations contained in Paragraph 22.

23. In 2004, the Cubs and Annex entered into an agreement which, *inter alia*, allowed Annex to operate the Ivy League Baseball Club and use the Cubs' Marks and display Cubs game telecasts in exchange for an annual royalty payment.

**ANSWER:**  Defendants admit all the allegations contained in Paragraph 23.

24. The Cubs have entered into similar license agreements with 12 other rooftop operators.

**ANSWER:**  Defendants are without sufficient information to form a belief as to the accuracy of the allegations contained in Paragraph 24, and these allegations are therefore denied.

25. When Gramatis began operating the Sheffield Baseball Club in 2007, the Cubs offered Gramatis an agreement with terms similar to those agreed to by the other rooftop operators. Gramatis led the Cubs to believe that he was willing to accept those terms and would abide by them, but the agreement was never finalized.

**ANSWER:**  Defendants deny all the allegations contained in Paragraph 25.

26. In February 2008, Plaintiff reiterated its offer to enter into an agreement with the Sheffield Baseball Club substantially similar to the agreement the Cubs have entered into with the other rooftop operators. The Sheffield Baseball Club, through Gramatis, refused.

**ANSWER:**  Defendants admit that the Club offered in February 2008 to enter into an agreement with SBC and that SBC rejected that offer. Defendants are without sufficient information to form a belief as to the accuracy of the allegations contained in Paragraph 26 pertaining to the terms offered to, and agreed upon, by the other rooftop operators, and these allegations are therefore denied. Responding further, Defendants deny the remaining allegations contained in Paragraph 26.

27.     In late 2007, Gramatis announced plans to operate the Wrigley Field Rooftop Club during the 2008 season.

**ANSWER:**    Defendants deny all the allegations contained in Paragraph 27.

28.     In February 2008, the Cubs offered to enter into an agreement with the Wrigley Field Rooftop Club substantially similar to the agreement the Cubs have entered into with the other rooftop operators.  The Wrigley Field Rooftop Club, through Gramatis, refused.

**ANSWER:**    Defendants admit that the Club offered in February 2008 to enter into an agreement with WFRC and that WFRC rejected that offer.  Defendants are without sufficient information to form a belief as to the accuracy of the allegations contained in Paragraph 28 pertaining to the terms offered to, and agreed upon, by the other rooftop operators, and these allegations are therefore denied.  Responding further, Defendants deny the remaining allegations contained in Paragraph 28.

## COUNT I:
## VIOLATION OF THE LANHAM ACT 15 U.S.C. §§ 1114, 1116(d) AND 1125

29.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants repeat and reallege their responses to Paragraphs 1 through 28 as if fully set forth herein.

30.     The Cubs' Marks are inherently distinctive, have acquired a secondary meaning among consumers and have come to be associated with Plaintiff.  Plaintiff uses the Cubs' Marks, *inter alia*, in advertisements promoting ticket sales in interstate commerce.

**ANSWER:**    Defendants deny all the allegations contained in Paragraph 30.

31.     The words and symbols used by Defendants in their marketing materials are, and have been, likely to cause confusion as to the affiliation, connection or association of Defendants with the Cubs and falsely state or imply the Cubs' approval or sponsorship of Defendants' business activities.  Defendants' marketing efforts have caused actual confusion among consumers.  Defendants acted willfully and wantonly in an intentional effort to trade on the Cubs' Marks and goodwill.

**ANSWER:**    Defendants deny all the allegations contained in Paragraph 31.

9

32. Defendants' activities in this regard are undertaken in connection with the sale of: goods and services in interstate commerce, and Defendants' activities adversely affect, *inter alia*, Plaintiff's ticket sales and/or the ticket sales of Plaintiff's licensed rooftop partners in interstate commerce.

**ANSWER:** Defendants deny all the allegations contained in Paragraph 32.

33. Plaintiff has been and will continue to be injured by Defendants' misleading advertising.

**ANSWER:** Defendants deny all the allegations contained in Paragraph 33.

## COUNT II:
## VIOLATION OF THE COPYRIGHT ACT 17 U.S.C. §§ 101, *et seq*.

Because the Defendants have filed a motion to dismiss Count II pursuant to Federal Rule of Civil Procedure 12(b)(1) for failing to establish subject matter jurisdiction over this claim, they do not provide an answer or affirmative defenses thereto – specifically Paragraphs 34 through 42 of the First Amended Complaint. The Defendants reserve the right to submit said answer and/or affirmative defenses at a later date if and when appropriate.

### <u>AFFIRMATIVE DEFENSES</u>

#### FIRST AFFIRMATIVE DEFENSE

The Club fails to state any claims upon which relief may be granted.

#### SECOND AFFIRMATIVE DEFENSE

The Club's claims are barred by the doctrine of laches.

#### THIRD AFFIRMATIVE DEFENSE

The Club's claims are barred by the doctrine of estoppel.

#### FORTH AFFIRMATIVE DEFENSE

The Club has waived any rights as asserted against any or all of the Defendants.

### FIFTH AFFIRMATIVE DEFENSE

The Defendants are operating pursuant to lawful government licenses issued by the City of Chicago pursuant to the Municipal Code of Chicago §4-388-010, *et seq*.

### SIXTH AFFIRMATIVE DEFENSE

The Defendants' alleged use of the "Cubs" name and/or the term "Wrigley Field" constitutes descriptive or nominative fair use in that said usage of these terms is in their primary descriptive sense.

### SEVENTH AFFIRMATIVE DEFENSE

The "Cubs" name is generic and/or highly descriptive and has not acquired secondary meaning as the salient feature of a family of marks.

### EIGHTH AFFIRMATIVE DEFENSE

The Club's equitable claims are barred because said claims are moot.

### JURY DEMAND

Defendants hereby demand a trial by jury as to all appropriate claims pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure.

### PRAYER FOR RELIEF

WHEREFORE, Defendants, Wrigley Rooftops III, L.L.C., d/b/a Wrigley Field Rooftop Club; Wrigley Rooftops IV, L.L.C., d/b/a Sheffield Baseball Club; and Thomas Gramatis ("Defendants") request that the Court dismiss with prejudice each and every claim set forth in the First Amended Complaint of Chicago National League Ball Club, LLC and enter judgment

thereon in favor of them, together with such costs, attorneys' fees, and other relief as the Court deems just and appropriate.

Dated: March 31, 2008

Respectfully submitted,

WRIGLEY ROOFTOPS III, L.L.C. d/b/a WRIGLEY FIELD ROOFTOP CLUB; WRIGLEY ROOFTOPS IV, L.L.C. d/b/a SHEFFIELD BASEBALL CLUB; and THOMAS GRAMATIS

By: /s/ Kenneth K. Dort\_\_\_\_\_
One of Their Attorneys

Kenneth K. Dort (ARDC No. 6193880)
George R. Spatz (ARDC No. 6237555)
Jeremiah J. Posedel (ARDC No. 6291892)
**MCGUIREWOODS LLP**
77 West Wacker Drive
Suite 4100
Chicago, Illinois 60601-1818
T: (312) 849-8100
F: (312) 698-4574

\5188746.4